[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
The parties to this seventeen-year marriage were married in Brockton, Massachusetts, on January 16, 1983. They have three minor children issue of the marriage, namely: BRIAN, born October 9, 1983, EMILY, born August 2, 1990, and REBECCA, born December 31, 1991. The Complaint was orally amended at the time of hearing to correct the birth dates of the two daughters. The defendant testified that their son suffers from asthma and allergies. In addition, he and his sisters engage in counseling at their schools. Rebecca also had four months of private counseling. The parties have been separated for about one (1) year. The plaintiff resides in an apartment in New Haven, and the defendant and the minor children reside in the marital home at 30 Hoover Street, Milford, Connecticut.
The plaintiff husband is forty-three (43) years old and describes his health as excellent. He began his education at Ohio State University and later completed his degree at the University of Bridgeport in 1994. Other than a brief period of unemployment, he has been steadily employed since leaving Ohio in 1982, mainly in the computer related field. For the past three years he has been employed by Pitney-Bowes in Stamford as a Project Leader where he earns about $95,000.00 per year. His benefits include group life insurance ($120,000.00 — $140,000.00), a modest 401(k) account, as well as medical/dental insurance. He also participates in a pension plan, but has not yet reached the required five (5) years for vesting. As an additional source of income, he continues to teach part-time at both Fairfield University and the University of Bridgeport, although at a reduced schedule that varies from semester to semester. His earnings from teaching are approximately $5,000.00 per year. He testified that his immediate supervisor at Pitney Bowes has expressed concerns over the impact that the teaching has on his primary job. The plaintiff, himself, has indicated that there is a large amount of preparation CT Page 7347 needed, in addition to the actual teaching, and that he has voluntarily cut back his schedule. He says that he loves teaching. In addition to his work, he engages in some hobbies that include the production of programs for local access cable TV, skiing with his family, and S/M fantasy/bondage along with visits to sex clubs in New York City.
The defendant wife is also about the same age and described her health as good at the time of the marriage. She testified that she began to experience health problems following the birth of her son in 1982. She first described a breakdown in her hormone system, and said that she was later diagnosed with joint problems and fibromyalgia in 1989. There is an apparent stress connection between incidents of the latter, which flared up again in 1992 after a period of relative dormancy. When asked if she had applied for Social Security Disability, she responded that she had been considering doing so, but that she had not yet done so. In addition, she was diagnosed with "rapid cycle" bipolar disorder in which her changes in mood are more rapid and pronounced. In her case, she engaged in fast driving and buying binges, including the purchase of an extensive "Barbie" doll collection. In April 1998, she voluntarily admitted herself to Hall-Brooke Hospital. Her medication includes Zoloft, Deprecote, and Ambient, all of which she expects to take for the rest of her life. She spends $40.00 per month on medication with a $10.00 co-pay. She currently attends therapy once a week and consults a psychiatrist on a "semi regular" basis. To compound her problems, she broke an ankle as a result of a fall on the ice last February. She had two pins inserted and will undergo about two and one-half months of physical therapy. She testified that she expects a 95% recovery. She holds a B.A. in Communication/Theater (major) and psychology (minor) from Bridgewater State. Her employment has been sporadic throughout the marriage, but this has been a result of a combination of the family move from Ohio, her health, and the birth of the three children. At first, she was employed on a contract basis in theater costume design for various theater companies. In the main, however, she has worked at hourly paying jobs as varied as the Deli at Stop Shop, a costume shop, a seamstress at her house, a receptionist at a law firm, an insurance agency, and a telemarketer for Grolier. None of these provided any long-term benefits or retirement, and the income was used for family expenses such as groceries and day care. Defendant's earning capacity is very limited due to her health and lack of readily marketable skills.
The parties own a residence in Milford, Connecticut, located at 30 Hoover Street. The Husband describes the home as a three bedroom Cape Cod badly in need of deferred maintenance. He told the Court that while he was resident there, he was responsible for the repairs, but now that he is out of the house, it has deteriorated. As an example, the back stairs need repair, the pipes to the upstairs bathroom are not functioning, and CT Page 7348 there is a hole in the kitchen. There is no clothes washer, and the sewer pipe needs to be roto-rootered. The parties purchased the home in 1992. It is valued by the parties at between $135,000.00 and $145,000.00, with a current mortgage of $119,000.00. The title is in the plaintiff's name so as to avoid potential creditors. The parties are also owners of sixty-five (65) aces of land in southern Vermont which also was purchased in 1992. It is valued at $40,000.00 and has a mortgage of $18,000.00. The down payment came in part from savings and the balance from family. Title to this property is also in the name of the plaintiff. The plaintiff is currently paying the mortgage and carrying charges for both properties. Other than the plaintiff's small 401(k), the parties have no savings. The only significant assets are cars, computers, video equipment, and the "Barbie" doll collection.
As to the breakdown of the marriage, there is enough cause on both sides to go around. Both parties admitted that they were poor money managers, although the plaintiff attributes much of their current financial woes to the defendant's inability to handle the bills. The parties apparently engaged in spouse swapping early in their marriage. The plaintiff described the defendant as wanting an "open marriage," and she did not offer any testimony to contradict this. The defendant accused the plaintiff of numerous affairs. He admitted to four, but pointed out that the first person he had an affair with was introduced to him by the defendant. Again, the defendant did not contradict this. The plaintiff admitted to participating in what the Court considers non-conventional sexual activities, including bondage and visits to sex clubs. The defendant apparently did not participate in these activities. The plaintiff, in the opinion of this Court, has placed his work, including teaching, and his personal activities before his family which clearly has been in crisis, for some period of time, and, therefore, he must bear a greater share of responsibility for the breakdown of the marriage.
At the time of trial, the parties entered a partial Stipulation regarding those issues upon which they had reached agreement, which Stipulation was filed with the Court.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at trial, including the partial Agreement of the parties, as well as the factors enumerated in Sections46b-81, 46b-82, 46b-84, and 46b-215 of the Connecticut General Statutes, including the Child Support and Arrearage Regulations, hereby makes the following findings:
1. That it has jurisdiction. CT Page 7349
2. That the allegations of the complaint are proven and true.
3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown.
4. That portions of the partial Agreement of the parties, as on file with this Court, are fair and equitable under all of the circumstances, and the Court has incorporated those portions in its decree.
5. That the defendant has limited earning capacity due to her longstanding health problems as well as her limited and sporadic work history. The Court finds that her current earning capacity would be approximately $200.00 per week gross.
6. That, based upon the defendant's earning capacity and the plaintiff's earnings, the presumptive level of child support is $423.00 per week.
 ORDER
1. The marriage of the parties is hereby dissolved and they are each declared to be single and unmarried.
2. The parties shall have joint legal custody of the minor children, and the defendant shall have physical custody, subject to reasonable, liberal, and flexible visitation of the plaintiff. In the future, if any dispute shall arise regarding custody and visitation, the matter shall first be referred to Family Relations for mediation and recommendation prior to bringing the matter to the Court for disposition.
3. Commencing June 23, 2000, the plaintiff shall pay to the defendant the sum of $400.00 and weekly thereafter as and for periodic alimony, until the death of either party, or the remarriage of the Defendant, whichever shall sooner occur.
4. Commencing June 23, 2000, the plaintiff shall pay to the defendant the sum of $425.00 and weekly thereafter as and for child support, until such time as the oldest child shall reach the age of eighteen years, at which time child support for the remaining children shall be adjusted in accordance with the then existing Child Support Guidelines. The foregoing notwithstanding, if any child shall turn eighteen years old and is still in high school, then, in that event, the child support for each such child shall continue until the first day of next month following graduation from high school or his or her nineteenth birthday, whichever CT Page 7350 shall sooner occur, pursuant to Section 46b-84 (b) C.G.S.
5. As to the real estate at 30 Hoover Street, Milford, Connecticut, within thirty (30) days from the date of this Memorandum of Decision, the plaintiff shall convey his interest therein to the defendant by means of a fully-executed Quit Claim Deed along with completed Conveyance Tax Forms. At the time of the conveyance, it shall be the sole responsibility of the plaintiff to bring all mortgages, taxes, and insurance on said property current. Thereafter, the defendant shall have exclusive possession of the real estate and shall be responsible for the payment of all mortgages, liens, taxes, and insurance, and shall indemnify and hold the plaintiff harmless from any further liability thereunder.
6. As to the real estate located in the State of Vermont consisting of approximately sixty-five (65) acres, the parties shall list same for sale within thirty (30) days from the date of this Memorandum of Decision with a mutually acceptable broker at an asking price of no less than $40,000.00, or at such other price as the parties shall otherwise agree. Upon sale of the property, from the proceeds shall be paid the customary and ordinary costs associated with a sale of real estate, including broker attorney fees, conveyance taxes, and any mortgages and liens, as well as the accumulated marital debt as shown on the defendant's Financial Affidavit. After the payment of these sums, the net proceeds up to and including $6,000.00 shall be paid to the plaintiff. Any sum in excess thereof shall be divided equally by both parties. At his option, the defendant may purchase the defendant's interest in the property. In order to do so, the parties must obtain a certified appraisal by a qualified appraiser familiar with property values in the area. In the event that the parties are unable to agree upon an appraiser, each party shall select an appraiser who, in turn, shall agree upon a third qualified appraiser who shall determine fair market value. The net value upon which the plaintiff's purchase shall be made shall be the fair market value less the cost of the appraisal and the current balance of the existing mortgage as well as the marital debts as shown on the defendant's financial affidavit (estimated closing costs shall not be taken into consideration) both of which the plaintiff shall assume and indemnify and hold the defendant harmless from any further liability thereon. From the balance, the first $6,000.00 shall be credited to the plaintiff, and one-half the balance, if any, shall be paid to the defendant. The plaintiff shall have the sole responsibility for the payment of the balance of the mortgage and the payment of real estate taxes. The Court shall retain jurisdiction with regard to any conflicts arising out of this issue.
7. The plaintiff shall maintain and pay for health insurance for each of the minor children so long as he shall be obligated to pay child CT Page 7351 support for that child. Un-reimbursed medical, dental, orthodontic, optical, pharmaceutical, counseling, psychiatric, and psychological expenses for the minor children, shall be divided by the parties, 60% by the plaintiff and 40% by the defendant. The provisions of Section 46b-84
(e) shall apply. Day care expenses shall be shared in accordance with the same formula. The parties have stipulated that should the defendant become employed, day care expenses shall include summer camp for either or both younger children.
8. The plaintiff shall notify his employer of his change in marital status and shall cooperate with the defendant in obtaining health insurance coverage under state and federal law (COBRA or otherwise). The plaintiff shall contribute to the cost of the premiums for the defendant's health insurance coverage (COBRA or otherwise) in an amount not to exceed $250.00 per month, and the defendant shall be responsible for the balance of the premiums, if any, until the death of either party, the remarriage of the defendant, or three (3) years, whichever shall sooner occur. Such payments by the plaintiff shall be considered additional periodic alimony.
9. The plaintiff shall retain both his 401(k) balance and his present and future pension rights at Pitney Bowes free and clear of any claims by the defendant. In the future, should the plaintiff begin to receive payments therefrom, and he continues to have an alimony obligation to the defendant, the income from the pension shall be considered in the determination of an appropriate alimony payment. Likewise, if in the future the defendant shall receive Social Security Disability Income, such sums may be considered in any determination of an appropriate amount of alimony.
10. Personal property shall be divided as follows:
A. The defendant shall retain the "Barbie" doll collection free and clear of any claims by the plaintiff.
B. Each party shall retain the computer and related equipment that is currently in their respective possessions.
C. The plaintiff shall retain the video camcorder free and clear of any claims by the defendant.
D. The children's furniture shall remain at the defendant's residence.
E. The home furnishing (other than the children's furniture) shall be divided as nearly equally as possible. In the event that the parties are CT Page 7352 unable to agree upon a division, the issue is hereby referred to Family Relations for resolution and recommendation.
F. Each party shall be entitled to keep the automobile which they are currently driving free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
G. The plaintiff shall be entitled to keep the People's Bank account of approximately $500.00, as well as the security deposit in the amount of $950.00.
11. The marital debts, as shown on the defendant's Financial Affidavit, shall be paid as set forth in paragraph 6 of this Memorandum of Decision. In the event that the proceeds from the sale of the Vermont property are not sufficient to fully cover all of these debts, both parties shall share equally in the responsibility for the payment of the balance.
12. The plaintiff shall maintain his existing term life insurance through his current employer, and he shall name the defendant and the minor children as equal beneficiaries so long as he has an alimony and/or child support obligation. After the child support ceases, he shall maintain $100,000.00 of his term life insurance (in existence as of the date of this Memorandum of Decision) for the benefit of the defendant so long as he has an alimony obligation toward her or until his sixty-fifth (65th) birthday, whichever shall sooner occur. In the event that he shall become unemployed, he shall, if he is insurable and said premiums are reasonable, obtain and maintain a minimum of $100,000.00 (or such smaller amount as he qualifies for) term life insurance for the benefit of the defendant and the minor children so long as he has an alimony and child support obligation, and one-half that amount in the event that his obligation is solely alimony. The plaintiff shall provide satisfactory proof that the insurance is in place on an annual basis, at the request of the defendant.
13. The parties shall divide the 1999 state and federal income tax refunds equally. Each party shall cooperate with the other in endorsing and/or negotiating the check(s), said division to take place within seven (7) days of receipt of the check(s) by either party.
14. Commencing with the tax year 2000, so long as he is current in his child support payments, the plaintiff shall be entitled to claim the personal exemptions for each of the minor children, and the defendant shall promptly execute the necessary documentation and deliver same to CT Page 7353 the Plaintiff in a timely manner for filing with the IRS on an annual basis.
15. Each party shall be responsible for the payment of their own attorney fees and costs of suit.
16. The Court hereby orders an Immediate Wage Withholding Order pursuant to Section 52-362 C.G.S. in order to secure the payment of the alimony and child support orders.
Shay, J.